**NOT FOR PUBLICATION**

```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
_____
                              :
DERICK D. LAWRENCE,           :    Civil Action No. 12-0393 (JBS)
                              :
          Plaintiff,          :
                              :    OPINION
     v.                       :
                              :
GARY LANIGAN, et al.,         :
                              :
          Defendants.         :
_____:
```

**APPEARANCES:**

    DERICK D. LAWRENCE, #855937A, Plaintiff Pro Se
    South Woods State Prison
    215 S. Burlington Rd.
    Bridgeton, NJ  08302

**SIMANDLE, Chief Judge:**

Plaintiff, Derick D. Lawrence, a prisoner incarcerated at South Woods State Prison, seeks to file a Complaint asserting violation of his rights under 42 U.S.C. § 1983 without prepayment of the filing fee. This Court will grant Plaintiff's application to proceed in forma pauperis. Having screened Plaintiff's Complaint, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will allow the First Amendment retaliation claim to proceed against defendant Charles Warren and dismiss the remaining federal claims and defendants.

## I.  BACKGROUND

Derick D. Lawrence brings this Complaint for violation of his constitutional rights under 42 U.S.C. § 1983 arising from his

incarceration at Southern State Correctional Facility ("SSCF") against the Commissioner of the New Jersey Department of Corrections (Gary Lanigan), Assistant Commissioner Rogers, Administrator Charles Warren, Asst. Administrator Jalloh, Head Disciplinary Officer Oszvart, Disciplinary Officer Norma Morales, and several corrections officers at SSCF (Sgt. Santoro, officer Berry, Captain St. Hill, Captain Sheppard, Lt. Bonds, Lt. Walters, and "John Doe").  He asserts the following facts.  On June 14, 2011, while in the recreation yard at SSCF, Plaintiff was paged, and Captain St. Hill escorted him to the dayroom of his housing unit.  Plaintiff states that he was instructed to sit with five other inmates, i.e., James Revell, Mike Hunter, Alonzo Hammer, William Only, and Elvis Alicia.  Administrator Warren, in the presence of Capt. St. Hill, Capt, Sheppard, Lt. Walters, Lt. Bond, Sgt. Santoro, CO Berry, and several other unknown officers, read the names of the six inmates from six Remedy Forms which Warren held in his hands.  Lawrence asserts that Warren then asked if anyone would like to speak about his Remedy Form, and the following events occurred:

> As soon as the plaintiff raised his hand and began to speak by saying, "there is a ," Admin. Warren said, "lock him up."  Then Admin. Warren said, "you look like you were going to say something, lock him up also."  He was referring to inmate Only . . . .  The plaintiff and inmate Only were immediately taken to lock up and placed in Pre-Hearing Detention by Admin. Warren.

(Dkt. 1 at 3.)

Plaintiff alleges that the next day, he was charged with violation of code 253 (engaging in or encouraging a group demonstration) and code 306 (conduct which disrupts the orderly running of the facility).  Disciplinary Hearing Officer Morales allegedly adjourned the disciplinary hearings several times because Plaintiff requested to confront Administrator Warren, Sgt. Santoro, and CO Berry.  Plaintiff asserts that on July 18, 2011, substitute counsel

> relayed the information from H.O. Morales, that if plaintiff retracted his request for Confrontation with Administrator Warren and Sergeant Santoro and C/O Berry, that she, H.O. Morales, would downgrade his charge from a *253 to a 304 Abusive Language.  Again the *306 charge was believed to have not been an issue at this time.  The substitute counsel informed the plaintiff that the confrontation would <u>not</u> take place that day and he would be postponed again.  That was the <u>35th</u> day in Pre-hearing-detention.
>
> Because the plaintiff could not fathom being on Pre Hearing Detention any longer he retracted his request for confrontation.  The H.O. found plaintiff guilty of 304 and gave him 15 days lock-up, 90 days Administrative Segregation, and 60 days loss of commutation time.  However, she <u>also</u> found plaintiff guilty of the *306 charge and gave him 15 days lock-up for that, even after she stated <u>that charge</u> was no longer an issue or in contention, in which she stated on June 24th, 2011, and agreed that <u>no code</u> was called, but that extra officers came with Administrator Warren.
>
> Assistant Administrator Mr. Jalloh upheld the hearing officer[']s decision and his reason was that, "encouraging other inmates to not follow new security measures will not be tolerated."  That charge was thrown out because nothing on the record supported that actually took place, and the plaintiff was found guilty of 304, Abusive Language, which had nothing to do with anyone not following newly implemented security measures . . .

> The Administrator could have taken those six (6) inmates in many other rooms that were available in the Gateway building in the Southern State Minimum Complex. The plaintiff however asserts that, the administrator's agenda was to create a situation to <u>make it seem as though</u> there was a group demonstration and then falsify write-ups and reports to support the fabricated incident that <u>NEVER</u> took place. This was to discourage any other inmates from filing Administrative Remedies concerning the movements in the Minimum Complex at Southern State.
>
> The plaintiff had never received any other write-ups. He was a model inmate. He had been approved four (4) weeks for transfer to the Assessment Center at either Talbot Hall or Boe Robinson, to be transferred to a Halfway House. It would have made no sense to raise his voice or act disruptive towards the Administrator at any time, but especially at that point in time, and in the presence of Captains, Lieutenants, and Sergeants in charge of Security.

(Dkt. 1 at 4.)

Plaintiff maintains that defendants inflicted Cruel and Unusual Punishments by placing him in Pre-Hearing Detention and falsifying reports to justify false charges, they retaliated, and they violated his rights to due process and equal protection. (<u>Id.</u> at 5-6.) He seeks damages, attorney fees, and injunctive relief placing a hearing officer at SSCF who will adhere to the New Jersey Administrative Code. (Dkt. 1 at 6.)

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding <u>in forma pauperis</u> or a

4

prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

Ashcroft v. Iqbal, 556 U.S. 662 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Iqbal, 556 U.S. at 678 (citation omitted). Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates. Id. at 677. Rather, the facts set forth in the complaint must show that each defendant, through the person's own

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

individual actions, has violated the plaintiff's constitutional rights.  Id.  This Court must disregard labels, conclusions, legal arguments, and naked assertions.  Id. at 678-81.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and will be dismissed.  Id. at 678 (citations and internal quotation marks omitted); see also Bistrian v. Levi, ___ F.3d ___, 2012 WL 4335958 (3d Cir.  Sept. 24, 2012); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts") (emphasis supplied).  The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A.  Federal Claims

　　Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

6

>     any rights, privileges, or immunities secured
>     by the Constitution and laws, shall be liable
>     to the party injured in an action at law,
>     suit in equity, or other proper proceeding
>     for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

A. Segregated Confinement

Plaintiff asserts that defendants violated his due process and Eighth Amendment rights by holding him in Pre-Hearing Lock-Up for 35 days and sanctioning him with 30 days in lock-up and 90 days in administrative segregation for disciplinary offenses.

A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections. See Wolff v. McDonnell, 418 U.S. 539, 566-67 (1974). However, a prisoner is deprived of a liberty interest protected by the Due Process Clause only when the conditions of confinement "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). In considering whether the conditions impose atypical and significant hardship in relation to the ordinary incidents of

prison life, a court must consider "two factors:  1) the amount of time the prisoner was placed into . . . segregation; and 2) whether the conditions of his confinement . . . were significantly more restrictive than those imposed upon other inmates in solitary confinement."  Shoats v. Horn, 213 F. 3d 140, 144 (3d Cir. 2000).

To state an Eighth Amendment conditions of confinement claim, an inmate must allege facts plausibly showing (1) objectively, his conditions were so severe that they deprived him of an identifiable, basic human need, such as food, clothing, shelter, sleep, recreation, medical care, and reasonable safety, see Farmer v. Brennan, 511 U.S. 825, 834 (1994); Helling v. McKinney, 509 U.S. 25, 32 (1993); Wilson v. Seiter, 501 U.S. 294, 305 (1991), and (2) defendant was deliberately indifferent to the risk of harm to the plaintiff's health or safety.  See Farmer, 511 U.S. at 837.

In this Complaint, Lawrence asserts that he was confined in Pre-Hearing Detention for 35 days and, as a result of the disciplinary sanctions, officials confined him in lock-up for 30 days and Administrative Segregation for 90 days, for a total of 155 days.  He did not present any facts to support a conclusion that the conditions in segregated confinement "were significantly more restrictive than those imposed upon other inmates in solitary confinement."  Shoats, 213 F. 3d at 144.  Moreover, the

Third Circuit has held that time exceeding 155 days in segregation does not constitute an "atypical and significant hardship" under Sandin. See Dunbar v. Barone, 2012 WL 2775024 (3d Cir. July 10, 2012) (18 months in segregation did not amount to atypical and significant hardship); Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not impose atypical and significant hardship); Griffin v. Vaughn, 112 F.3d 703, 705-07 (3d Cir. 1997) (15 months in segregation was not an atypical and significant hardship). Because Lawrence's allegations fail to establish that he was deprived of a protected liberty interest, his due process claim necessarily fails.

Nor do Lawrence's allegations state an Eighth Amendment claim because they do not show that: (1) his conditions in segregation were so severe that they deprived him of an identifiable, basic human need, see Farmer, 511 U.S. at 834; Helling, 509 U.S. at 32; Wilson, 501 U.S. at 305, (2) he was incarcerated under conditions posing a substantial risk of serious harm, Farmer, 511 U.S. at 828, or (3) prison officials were deliberately indifferent to his health or safety. See Johnson v. Chambers, 2012 WL 2393086 (3d Cir. June 26, 2012); Williams v. Clancy, 449 Fed. App'x 87, 89 (3d Cir. 2011); Renchenski v. Williams, 622 F.3d 315, 338 (3d Cir. 2010). This Court will accordingly dismiss the Eighth Amendment and Due

Process Claus claims based on his placement in segregation for failure to state a claim upon which relief may be granted.

B.  False Reports and Charges

Lawrence asserts that defendants violated his constitutional rights by including false allegations in misconduct reports However, the Third Circuit held in Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002), that, "so long as . . . procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."  In this case, Lawrence's allegations do not show any procedural due process violations.  Under these circumstances, the false misconduct reports do not assert a due process or other constitutional violation under § 1983.  See id.; Thomas v. McCoy, 467 Fed. App'x 94, 96 (3d Cir. 2012).

C.  Retaliation

This Court construes Lawrence's allegations as asserting that prison officials submitted false misconduct reports and confined him in segregation in retaliation for his submission of an administrative remedy and his attempt to answer Administrator Warren's solicitation for comments concerning the remedy.

"Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." Bistrian v. Levi, ___ F.3d ___, 2012 WL 4335958 (3d Cir. Sept. 24, 2012).  "Official reprisal for protected speech 'offends the Constitution [because]

10

it threatens to inhibit exercise of the protected right.'" Hartman v. Moore, 547 U.S. 250, 256 (2006) (quoting Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks and citations omitted).

Whether the allegedly adverse action was "'sufficient to deter a person of ordinary firmness from exercising his constitutional rights' is an objective inquiry and ultimately a question of fact." Bistrian, 2012 WL 4335958 at *19 (quoting Rauser, 241 F.3d at 333). To establish a causal link, the prisoner must show that the "constitutionally protected conduct was a 'substantial or motivating factor'" in the decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001) (quoting Mount Healthy City School Dist. B. of Ed. v. Doyle, 429 U.S. 274, 287 (1977)). However, "once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for

11

reasons reasonably related to legitimate penological interest." Rauser, 241 F.3d at 334 see also Carter v. McGrady, 292 F.3d 152, 154 (3d Cir. 2002) (retaliation claim fails where prison officials would have disciplined inmate for policy violations notwithstanding his protected activity).

Lawrence's allegations satisfy the first element, as he alleges that he engaged in conduct protected by the First Amendment, i.e., he submitted an administrative remedy request and he verbally responded to Administrator Warren's question asking for comments about the request.  His allegations satisfy the second element, as the time Lawrence spent in segregation could be sufficient to deter a reasonably firm prisoner from exercising his First Amendment rights.  See Bistrian at *19 (allegations of continued placement in administrative confinement were sufficient to assert adverse action); Thomas v. McCoy, 467 Fed. App'x 94, 96 (3d Cir. 2012) ("[F]alse misconduct reports may constitute a constitutional violation 'when they are instituted for the sole purpose of retaliating against an inmate for his . . . exercise of a constitutional right'") (quoting Smith, 293 F.3d at 653); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) ("Although it is possible that in some cases placement in administrative segregation would not deter a prisoner of ordinary firmness from exercising his or her First Amendment rights, we cannot say that such action can never amount to adverse action").

As to causation, Lawrence asserts that Administrator Warren ordered subordinates to put Lawrence into segregation as a direct result of Lawrence's verbal response to Warren's question about his administrative remedy. Lawrence has alleged a causal link between the exercise of his constitutional rights and the adverse action taken by defendant Warren. This Court will accordingly allow the First Amendment retaliation claim to proceed against defendant Charles Warren.

As to the other defendants, Lawrence generally alleges that they prepared false misconduct reports, but he does not identify the writer of any specific report, describe what each defendant falsely stated in any report, or provide facts establishing a causal link between the exercise of his constitutional rights and adverse action taken by that defendant. Because Lawrence makes no non-conclusory allegations causally linking defendants other than Warren to the alleged adverse action, the Complaint does not sufficiently plead a retaliation claim against the remaining defendants. This Court will therefore dismiss the retaliation claims against the remaining defendants without prejudice.

D.  Equal Protection

Lawrence contends that defendants were biased against him in violation of his right to equal protection of the laws. "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the

13

laws.'"  Vacco v. Quill, 521 U.S. 793, 799 (1997).  "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'"  Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)).

As Lawrence does not claim membership in a protected class, he must allege arbitrary and intentional discrimination in order to state and equal protection claim.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  To state an equal protection claim, Lawrence must assert facts showing:  "(1) the defendant[s] treated him differently from others similarly situated, (2) the defendant[s] did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006); see also Johnson v. Horn, 150 F.3d 276, 284 (3d Cir. 1998).

Here, Lawrence does not assert facts showing that he received different treatment from other similarly situated individuals, that the defendants did so intentionally, or that there was no rational basis for the difference in treatment.  Accordingly, he does not state an equal protection claim.  See Brown v. Beard, 445 Fed. App'x 453, 455 (3d Cir. 2011); Hodges v. Klein, 562 F.2d 276, 278 (3d Cir. 1977).

## V. CONCLUSION

Based on the foregoing, this Court will grant Plaintiff's application to proceed in forma pauperis, allow the First Amendment retaliation claim to proceed against defendant Warren, and dismiss the remaining federal claims and defendants.

                                 s/ Jerome B. Simandle
                                **JEROME B. SIMANDLE**
                                Chief Judge

Dated:   **September 26**  , 2012